OPINION
{¶ 1} Gerry Lasson appeals pro se from the trial court's entry of summary judgment in favor of appellee Debora Beverly on her complaint seeking the refund of a deposit paid in connection with a residential lease and purchase agreement, plus statutory damages, interest, costs, and attorney fees. *Page 2 
 {¶ 2} In support of her May 17, 2007 motion, Beverly submitted an affidavit in which she averred, inter alia, that she entered into a lease with Lasson for a home in West Milton, Ohio. Beverly also averred that she signed a purchase agreement for the same property and paid a $4,500 deposit. Thereafter, Lasson terminated the lease and gave Beverly notice to vacate the premises. Beverly complied with the notice. According to her affidavit, Lasson never returned any of her deposit and failed to provide an itemized accounting of the withheld funds. Beverly's affidavit also included averments denying allegations of libel, slander, fraud, conspiracy, extortion, coercion, blackmail, corruption, intentional infliction of emotional distress, and breach of contract raised by Lasson in pro se counterclaims. Lasson never filed a memorandum in opposition to Beverly's summary judgment motion.
 {¶ 3} On July 3, 2007, the trial court sustained Beverly's motion. In its decision, the trial court noted that "a packet of papers" had been dropped off at the court sometime in June 2007. The trial court observed that the papers, which had not been filed and appeared not to have been served on Beverly's counsel, were captioned, "Motion Contra on Motion for Summary Judgment of Plaintiff and Notice of Upcoming Summary Judgment against Plaintiff, D. Beverly." The trial court ignored these papers because they were unfiled and did not appear to have been served on opposing counsel.
 {¶ 4} In entering summary judgment in favor of Beverly, the trial court reasoned:
 {¶ 5} "Upon the Plaintiff's motion for summary judgment on her complaint, the Plaintiff presents two documents she signed. One is clearly a lease and the Plaintiff's security deposit under this document was $100.00. *Page 3 
 {¶ 6} "The second document is titled `Guaranteed Purchase Agreement' but it states it is not a land contract. Under this document, the Plaintiff paid a deposit of $4,500 to G. Lasson (the parties were denominated Seller or Buyer in the document. In addition the Seller's name was Action Homes. The Court perceives this is one of several fictitious names the Defendant uses, but there really is nothing of evidentiary material to establish this. However, in his answer, Mr. Lasson admits he entered into a contract denominated `Guaranteed Purchase Agreement.').
 {¶ 7} "The Plaintiff has argued this document is a supplemental lease, since, on page two, the document refers to itself as `this lease.'
 {¶ 8} "The document also claims that the Plaintiff must pay a non-refundable deposit of earnest money (of $5,900.00) at the time of the execution of the agreement.
 {¶ 9} "The document does not appear to be an option to purchase because it calls for monthly installments that are exactly the same as the lease agreement.
 {¶ 10} "The document itself states it is not a land contract, nor does it appear to have been recorded in the recorder's office of Miami County, Ohio.
 {¶ 11} "Curiously, it also states that the buyers may not purchase the property from the deed holders without the seller's written approval. This suggests that Action Homes does not have fee simple title to the property.
 {¶ 12} "The document also states the buyer shall have the option to prepay additional amounts at any time on the existing first mortgage, without penalty. Why anyone would pay a mortgage without having an interest in the property is unknown to the Court, but the terms of the document are ambiguous and one-sided.
 {¶ 13} "Unconscionability is generally recognized to include an absence of *Page 4 
meaningful choice on the part of one of the parties to a contract, combined with contract terms which are unreasonably favorable to the other party.
 {¶ 14} "The Plaintiff must establish both substantive unconscionability and procedural unconscionability in order for the Court to conclude the document (in this case the Guaranteed Purchase Agreement) was unconscionable.
 {¶ 15} "The Court concludes, from review of the evidentiary material, that both prongs of the concept have been established.
 {¶ 16} "Therefore, pursuant to O.R.C. 1302.15(A), the Court refuses to enforce the document titled `Guaranteed Purchase Agreement.'
 {¶ 17} "The deposit of $4,500 made by the Plaintiff under this document should therefore be returned to the Defendant [sic — Plaintiff].
 {¶ 18} "The Court finds that the Plaintiff provided the Defendant, in writing, her forwarding address pursuant to O.R.C. 5321.16 and that under the lease, she gave the Defendant a $100 security deposit which was not returned within thirty days of her vacating the premises.
 {¶ 19} "Accordingly, and pursuant to O.R.C. 5321.16(C), the Plaintiff is entitled to return of her $100 deposit plus damages of $100 and her reasonable attorney fees.
 {¶ 20} "The Court further finds from the affidavit of counsel, the itemization of his time, and the record in this case, that the amount of the attorney fees and his time and effort are evident and reasonable. Accordingly, the attorney fees as prayed for under O.R.C. 5321.16(C) are granted." (Doc. #9 at 3-5) (footnotes omitted).
 {¶ 21} In addition to entering summary judgment on Beverly's complaint, the trial court also entered summary judgment against Lasson on his counterclaims. In so doing, *Page 5 
the trial court relied on Beverly's unrefuted averments. (Id. at 3). This timely appeal followed.
 {¶ 22} Lasson advances the following seven assignments of error:
 {¶ 23} "1. "The trial court abused its discretion and erred as a matter of law by not accepting G. Lasson's (GAL) courtesy copy of his motion contra to summary judgment."
 {¶ 24} "2. "The trial court abused its discretion and erred as a matter of law when it did not delay the proceedings concerning summary judgment until the Langer Court ruled on GAL's request for leave as a defendant to file the same."
 {¶ 25} "3. "The trial court abused its discretion and erred as a matter of law when it did not ask for a status meeting to determine the status of the Langer Court's decision on GAL's request for leave * * * or suggest another procedural way to allow GAL to be heard."
 {¶ 26} "4. "The trial court abused its discretion and erred as a matter of law when it does not allow GAL to defend himself due to minor technical procedural issues, contrary to the Ohio Supreme Court's stated objectives of not ruling against a party for minor procedural error."
 {¶ 27} "5. "The trial court abuses its discretion and erred as a matter of law when it ruled on summary judgment coming to conclusions that cast a very negative view upon the business of GAL."
 {¶ 28} "6. "The trial court abuses its discretion and erred as a matter of law when it does not allow GAL to attempt to not abuse the process of the court, to attempt to extend the law."
 {¶ 29} "7. "The trial court abused its discretion and erred as a matter of law when *Page 6 
it does not give GAL due process and equal protection."
 {¶ 30} The essence of Lasson's various arguments, which we will address more fully below, is that the trial court erred in entering summary judgment against him without considering his unfiled "Motion Contra on Motion for Summary Judgment of Plaintiff and Notice of Upcoming Summary Judgment against Plaintiff, D. Beverly" or allowing him to be heard in some way.
 {¶ 31} In support of his assignments of error, Lasson notes that Judge Dennis Langer of the Montgomery County Common Pleas Court designated him a "vexatious litigator" under R.C. 2323.52 in Lasson v. Coleman, Montgomery C.P. No. 2005-CV-3436. As a result of this designation, Lasson contends he was required to obtain leave from Judge Langer to file a memorandum in opposition to Beverly's summary judgment motion in this Miami County case. Lasson asserts that he faxed a request for such leave to Judge Langer's office on June 5, 2007.[1] He further asserts that he dropped off a "courtesy copy" of his "Motion Contra on Motion for Summary Judgment of Plaintiff and Notice of Upcoming Summary Judgment against Plaintiff, D. Beverly" with the trial court in this case on June 5, 2007. In light of his prior vexatious litigator designation, Lasson contends he could do no more. He insists that he had to await approval from Judge Langer before he could actually file his opposition papers. Lasson points out, however, that the trial court sustained Beverly's motion on July 3, 2007, without Judge Langer *Page 7 
having addressed his request for leave to proceed in this case. Lasson insists he was placed in an untenable position. He risked a contempt citation if he filed an unauthorized memorandum opposing summary judgment, and he risked having Beverly's unopposed motion sustained if he did not file anything in opposition.
 {¶ 32} Upon review, we find Lasson's assignments of error to be unpersuasive. Lasson's arguments all rest on the premise that he was required to obtain leave from Judge Langer before filing a response to Beverly's summary judgment motion. The record does not support such a conclusion. After declaring Lasson a vexatious litigator, Judge Langer ordered him to file a written request in that court before (1) instituting legal proceedings in a common pleas court, court of claims, municipal court, or county court, (2) continuing any legal proceeding he previously had instituted in those courts, or (3) making any application, other than an application for leave to proceed, in any legal proceedings instituted by Lasson or another person in those courts. See Lasson v. Coleman, Montgomery C.P. No. 2005-CV-3436 (December 7, 2006 Decision, Order, and Entry, pg. 38).
 {¶ 33} In our view, the foregoing restrictions did not require Lasson to obtain Judge Langer's permission to file a memorandum opposing summary judgment in the present case. Judge Langer imposed the restrictions pursuant to R.C. 2323.52(D)(1), which provides:
 {¶ 34} "If the person alleged to be a vexatious litigator is found to be a vexatious litigator, subject to division (D)(2) of this section, the court of common pleas may enter an order prohibiting the vexatious litigator from doing one or more of the following without first obtaining the leave of that court to proceed: *Page 8 
 {¶ 35} "(a) Instituting legal proceedings in the court of claims or in a court of common pleas, municipal court, or county court;
 {¶ 36} "(b) Continuing any legal proceedings that the vexatious litigator had instituted in any of the courts specified in division (D)(1)(a) of this section prior to the entry of the order;
 {¶ 37} "(c) Making any application, other than an application for leave to proceed under division (F)(1) of this section, in any legal proceedings instituted by the vexatious litigator or another person in any of the courts specified in division (D)(1)(a) of this section."
 {¶ 38} Subsections (a) and (b) above plainly have no applicability because Beverly's lawsuit is not a legal proceeding that was instituted or continued by Lasson, the defendant. On the other hand, subsection (c) potentially does apply to a vexatious litigator who is a defendant. It prevents a vexatious litigator from making an "application" in legal proceedings instituted by "another person." Unfortunately, the statute does not identify what constitutes an "application." Although we have found no authority directly addressing the issue, we do not believe a defendant makes an "application" under R.C. 2323.52(D)(1)(c) when he files a memorandum opposing summary judgment. Black's Law Dictionary defines an "application" as a request or petition for something. Black's Law Dictionary (6th Ed. 1990) 98-99. Merely filing a memorandum opposing summary judgment does not constitute making a request or "application" under R.C. 2323.52(D)(1)(c). Therefore, Lasson was not required to obtain permission from Judge Langer before filing a memorandum opposing Beverly's summary judgment motion. Notably, although Lasson erroneously interpreted Judge Langer's ruling as imposing *Page 9 
such an obligation, Judge Langer himself never told Lasson that the vexatious litigator designation precluded filings as a defendant without prior leave of court.[2] Based on the reasoning set forth above, we conclude that nothing prevented Lasson from filing a memorandum in opposition to Beverly's summary judgment motion. Because Lasson failed to do so, the trial court did not err in treating Beverly's motion as unopposed.
 {¶ 39} The trial court also did not err in failing to consider Lasson's unfiled "courtesy copy" of his "Motion Contra on Motion for Summary Judgment of Plaintiff and Notice of Upcoming Summary Judgment against Plaintiff, D. Beverly." Motions and other papers not properly filed are considered unknown to a trial court. See, e.g., City ofLyndhurst v. Masseria (Oct. 23, 1997), Cuyahoga App. Nos. 71655, 71656. Accordingly, the first assignment of error is overruled.
 {¶ 40} Lasson likewise has not shown error in the trial court's failure to hold Beverly's summary judgment motion in abeyance pending a decision by Judge Langer on Lasson's request for leave to file opposition papers. We reach this conclusion for at least two independent reasons. First, as noted above, Lasson did not need Judge Langer's permission to oppose Beverly's motion. Second, nothing in the record properly before us reveals that the trial judge in this Miami County case even knew of Lasson's faxed request to Judge Langer in Montgomery County Common Pleas Court. Although Lasson has attached various papers to his appellate brief, they are not part of the record of proceedings below. The second assignment of error is overruled. *Page 10 
 {¶ 41} For the same two reasons, we reject Lasson's argument that the trial court erred in sua sponte failing to schedule a status conference to determine how he could be heard in this case. As set forth above, nothing precluded Lasson from simply filing a response to Beverly's summary judgment motion, and the record below does not reveal that the trial court even was aware of a request for leave in Judge Langer's court. Accordingly, the third assignment of error is overruled.
 {¶ 42} In his fourth assignment of error, Lasson contends the trial court erred in refusing to allow him to defend himself "due to minor technical procedural issues." The record is devoid of evidence, however, that the trial court did anything to deprive Lasson of an opportunity to defend against Beverly's motion. When Lasson failed to file a memorandum in opposition to the motion, the trial court merely treated it as unopposed and proceeded accordingly. The fourth assignment of error is overruled.
 {¶ 43} In his fifth assignment of error, Lasson contends the trial court erred in its summary judgment ruling by casting his business in a negative light without giving him an opportunity to provide a response. Once again, however, nothing prevented Lasson from filing a memorandum in opposition to summary judgment and telling his side of the story. The fifth assignment of error is overruled.
 {¶ 44} In his sixth assignment of error, Lasson asserts that he is not attempting to be a vexatious litigator and that he has sought assistance in filing for leave to proceed. Although we are unsure what specific error Lasson is attempting to assert, we note that he was not required to obtain leave to oppose Beverly's summary judgment motion despite his vexatious litigator status. Accordingly, the sixth assignment of error is overruled. *Page 11 
 {¶ 45} In his seventh assignment of error, Lasson claims the trial court deprived him of due process and equal protection. But the trial court merely refused to consider an unfiled "courtesy copy" of a document that Lasson could have filed. Upon review of the record below, we see no violation of Lasson's due process or equal protection rights by the trial court. The seventh assignment of error is overruled.
 {¶ 46} Although we are sympathetic to Lasson's perceived dilemma, the only error was his misperception that he needed leave from Judge Langer to oppose Beverly's summary judgment motion. While this error by Lasson is perhaps understandable, we cannot ascribe it to the trial court, which did not abuse its discretion by ignoring unfiled papers and proceeding accordingly. Having overruled each of Lasson's assignments of error, we affirm the judgment of the Miami County Common Pleas Court.
WOLFF, P.J., and DONOVAN, J., concur.
[1] A review of Judge Langer's docket in Lasson v. Coleman, Montgomery C.P. No. 2005-CV-3436, reveals no filed copy of any request for leave to proceed in the present case. We have no way of knowing with certainty whether Lasson's fax to Judge Langer complied with the requirements of Mont. Co. C. P. R. 1.35, which governs facsimile filings. Lasson has attached an unfiled copy of a purported fax to his appellate brief at exhibit seven. He appears to have faxed the trial court directly rather than the clerk of court's office in contravention of the local rule.
[2] To the contrary, Judge Langer ultimately filed several entries expressly advising Lasson that the vexatious litigator designation did not preclude Lasson from filing papers as a defendant. See generallyLasson v. Coleman, Montgomery C.P. No. 2005-CV-3436. *Page 1